IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **TONY PERRIGO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-cv-735-CJP**[1] |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Tony Perrigo, represented by counsel, seeks judicial review of the final agency decision denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Mr. Perrigo applied for benefits in February, 2010, alleging disability beginning on January 28, 2010.   The alleged onset date was the day after his prior application for benefits was denied.   (Tr. 27).   After holding an evidentiary hearing, ALJ Joseph L. Heimann denied the application on March 23, 2012.   (Tr. 27-40).   The Appeals Council denied review, and the decision of the ALJ became

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).   See, Doc. 18.

the final agency decision.   (Tr. 1).   Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ ignored a "medical source statement" from a treating source.

2. The ALJ incorrectly stated that "no examiner observed that the claimant could not maintain socially appropriate behavior."

3. The ALJ failed to properly assess whether plaintiff met Listing 12.06.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   **42 U.S.C. §423(d)(1)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   **42 U.S.C.**

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

**§423(d)(3).**  "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. **20 C.F.R. §§ 404.1572.**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue***, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work

experience.   **20 C.F.R. §§ 404.1520;** *Simila v. Astrue***, 573 F.3d 503, 512-513 (7th Cir. 2009);** *Schroeter v. Sullivan***, 977 F.2d 391, 393 (7th Cir. 1992).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler***, 737 F.2d 714, 715 (7th Cir. 1984).   *See also* Zurawski v. Halter***, 245 F.3d 881, 886 (7th Cir. 2001**) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."   **42 U.S.C. § 405(g)**.   Thus, this Court must determine not whether Mr. Perrigo was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.   **See,** *Books v. Chater***, 91 F.3d 972, 977-78 (7th**

Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Heimann followed the five-step analytical framework described above. He determined that Mr. Perrigo had not been engaged in substantial gainful activity since the alleged onset date.   He found that plaintiff had severe physical impairments of degenerative disc disease, status post left shoulder injury, osteoarthritis of the left shoulder, and right ankle tenosynovitis.   He determined that plaintiff had severe mental impairments of bipolar disorder with mood swings, post-traumatic stress disorder, and attention deficit hyperactivity disorder.   In addition, he had substance abuse, in remission.   The ALJ further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Mr. Perrigo had the residual functional capacity (RFC) to

perform work at the sedentary exertional level, with physical and mental limitations.  Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do his past work.   However, he was not disabled because he was able to do other jobs which exist in significant numbers in the regional and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff, which all relate to limitations arising from his mental condition.   Therefore, the Court will omit substantial discussion of evidence related only to his physical limitations.

### 1.    Denial of Prior Application

Mr. Perrigo filed a prior application for benefits in July of 2007, alleging that he became disabled on October 6, 2006.  He had injured his shoulder, neck and back in a motor vehicle accident.  He testified that he had suffered from depression since the accident, but he had not received any treatment for depression.   The application was denied on January 27, 2010.  (Tr. 127-135).

### 2.    Agency Forms

Plaintiff was born in 1971 and was 38 years old on the alleged date of onset. He was insured for DIB through September 30, 2010.[3]   (Tr. 234).

---

[3] The date last insured is relevant to the claim for DIB, but not the claim for SSI.   See, 42 U.S.C. §§ 423(c) & 1382(a).

In addition to his physical conditions, plaintiff said that he suffered from suicidal thoughts, depression, post-traumatic stress disorder, ADD/ADHD and memory loss.   (Tr. 239).

He had worked in the past as a barge worker, security officer, tree cutter, waiter and department store stocker.   (Tr. 241).

### 3.    Evidentiary Hearing

Mr. Perrigo was represented by an attorney at the evidentiary hearing on January 25, 2012.   (Tr. 49).   He testified that he had been abused as a young child when he was in foster care, and the memories had started coming back to him.   He had nightmares.   He could not deal with stress.   He had been receiving mental health counseling and medication from Community Resource Center for about a year and a half at the time of the hearing.   (Tr. 78-82).   His main mental health problem was stress.   He no longer had thoughts of suicide.   (Tr. 83).

Mr. Perrigo also testified that he had had ADD/ADHD all his life.   (Tr. 107).

### 4.    Mental Health Records

Mr. Perrigo received mental health treatment at Community Resource Center.   He first contacted that office by phone on February 9, 2010, stating that he had been going through "38 years of pure hell."   He said that his father had died in his arms when he was aged 7, and he had been molested as a child by a teacher and a female cousin.   He also indicated that he had ADD/ADHD.   He was given an appointment for February 17, 2010.   (Tr. 701).

Plaintiff was seen by a counselor named Jack Koch on February 17, 2010, to begin the mental health assessment process. (Tr. 700). He was seen again in March, 2010. Mr. Koch noted that the assessment process was "taking longer than expected due to various issues and complications of the case." (Tr. 699). In April, 2010, plaintiff brought in paperwork to be completed for his attorney. (Tr. 697). In May, 2010, plaintiff met with Mr. Koch again to continue the mental health assessment process. He brought in another form from his attorney for his disability claim. Mr. Koch completed this form, but noted that "in retrospect should have been delayed until the Assessment is completed." Plaintiff also brought his four-year-old son with him. (Tr. 696).

Gregory Rudolph, Ph.D., performed a consultative examination on May 4, 2010. Mr. Perrigo said that he was "receiving counseling" from Jack Koch, but was not taking any psychiatric medications. No records were furnished for Dr. Rudolph's review. Plaintiff said that he had ADHD, PTSD and bipolar disorder. Dr. Rudolph observed that plaintiff was cleanly dressed, polite, and gave appropriate answers. He maintained good eye contact. He spoke in a normal tone of voice. His thoughts were relevant and he was coherent. His mood was depressed, but his affect was appropriate. He had no unusual thought disturbances. He drove himself to the appointment. He reported that he was able to take care of his personal needs. He was not able to go to the grocery store. He was able to drive short distances, cook on the stove and do "limited household chores." He had "one or two" friends. On mental status exam, he was oriented to

reality, his memory was adequate, and his fund of information was adequate.   He was able to use judgment and reasoning skills.   (Tr. 597-600).

On June 13, 2010, Dr. Vittal Chapa performed a consultative physical examination of plaintiff.   With regard to mental status, Dr. Chapa noted that Mr. Perrigo was alert and oriented, and had no delusions or hallucinations.   He was able to answer questions appropriately and was in good contact with reality.   (Tr. 635).

Plaintiff cancelled two appointments at Community Resource Center in June, 2010.   In July, 2010, he met with Jack Koch to complete the treatment planning process.   Plaintiff brought in more paperwork to be filled out for his attorney.   Mr. Koch noted that it takes "more than a few sessions with a therapist to substantiate a diagnosis."   (Tr. 806).

The assessment and treatment planning process was finally completed in August, 2010, when Mr. Koch met with plaintiff to "formally discuss the service needs."   (Tr. 805).   The result of the assessment and treating planning process was a document entitled "MH Individual Treatment and Recovery Plan."   The Axis I diagnosis was PTSD.   His abilities were that he was "verbal, respectful, punctual, wants to find gainful employment ande [sic] seems motivated to try to get better." It was noted that he had a driver's license and was able to drive himself to sessions. (Tr. 786-789).

Mr. Koch saw him for an individual therapy session on September 22, 2010. The stated goal was to "decrease intensity and frequency of PTSD symptoms that

has negatively impacted client's mood, relationships and other areas of his level of functioning." (Tr. 803).

In September, 2010, Mr. Koch referred plaintiff to a psychiatrist at Community Resource Center. The reason for the referral was that Mr. Perrigo had been diagnosed with PTSD, and his inability to work had exacerbated his symptoms of depression and anxiety. (Tr. 801).

Plaintiff was seen by Advanced Practice Registered Nurse (APRN) Janet Merrell on November 9, 2010. She diagnosed PTSD, dysthymia and a history of ADHD. She prescribed Cymbalta.[4] (Tr. 1039-1040). The next month, APRN Merrell noted that his depression was better, but he continued to have nightmares and did not leave home much due to pain. She increased the dosage of Cymbalta and added Trazodone. (Tr. 1041-1042).

In February, 2011, APRN Merrell saw Mr. Perrigo again for medication monitoring. Plaintiff indicated that he was feeling stressed. On exam, he had a bland affect. He made steady eye contact. He had no suicidal or homicidal ideation. He felt "negative" and obsessed about his physical pain. She increased his Trazodone. (Tr. 1043-1044).

Mr. Perrigo apparently missed some counseling appointments. In April, 2011, Mr. Koch noted that he had not been seen since he had been referred to the

---

[4] In Illinois, an APRN is authorized to prescribe specified classes of drugs when a physician "delegates limited prescriptive authority … in the written collaborative agreement." The APRN is required to obtain "a mid-level practitioner controlled substances license" and to practice under the supervision of the collaborating physician. See, "Prescriptive Authority for Advanced Practice Nurse Mid-Level Practitioner" at www.idfpr.com/Renewals/Apply /forms/f1880apn.pdf, accessed on June 25, 2014.

agency psychiatrist.   Plaintiff stated that he wanted to continue with his treatment. (Tr. 796).

On May 11, 2011, Mr. Perrigo appeared for an update of his mental health assessment with Jack Koch.   He was wearing his pajamas and said that it took him an hour most mornings to get out of bed.   He said he had poor interactions with family and neighbors, and had been fired from jobs due to problems getting along with coworkers.   On mental status exam, he was irritable, withdrawn, and impulsive, with a blunted affect.   His speech was loud, interruptive and abrupt. However, his memory was intact and he was oriented to reality.   (Tr. 757-760). Mr. Koch filled out a form assessing his ability to do work-related mental activities a little over a week later.   (Tr. 755-756).

On May 17, 2011, he told APRN Merrell that he was doing better on Lamictal. He had some decrease of his irritability.   She noted that he had a bland affect and steady eye contact.   He occasionally smiled.   He had a neat, well-groomed appearance.   He was "very focused on physical pain" and had a negative thought pattern.   (Tr. 1048-1049).   In July, 2011, he was doing better with managing his anger.   APRN Merrell noted that he had a bland affect, good eye contact, and a neat well-groomed appearance.   He spoke in a soft tone of voice.   (Tr. 1051-1052).

In September, 2011, Mr. Perrigo reported to counselor Stacie Murray that he had not had any major anger problems since his last visit.   He still felt anger towards his in-laws, but he was able to control his emotions.   (Tr. 1053).   That same month, Mr. Perrigo reported to APRN Merrell that he felt "O.K."   He felt that

his medications were helping him.   He did report that he did not like to go shopping because people bumped into him, and he had a neighbor that he did not get along with.   (Tr. 1054-1055).

Jean Nosbisch, another counselor at Community Resource Center, saw Mr. Perrigo for the first and only time on November 22, 2011.   He had been transferred to her because another counselor had resigned.   Mr. Perrigo told her that he "continues to deal with PTSD symptoms."   He said he was "applying for disability due to PTSD and past injuries from wrecks."   As it was their first visit, they "mostly built rapport."   (Tr. 1056).

In December, 2011, plaintiff reported to APRN Merrell that he had been unable to get Cymbalta because Medicaid would not pay for it, and he noticed an increase in his pain, irritability and depression.   She gave him a three months' supply of samples.   She noted that he had a bland affect, maintained good eye contact, and had a neat, well-groomed appearance. (Tr. 1057-1058).   A medication list indicates that his Lamictal and Trazodone were increased on January 10, 2012, but there is no treatment note from that date.   (Tr. 1062, 1008-1009).

**5.    Opinions of Jean Nosbisch**

Jean Nosbisch, MS, LCPC, completed a form entitled Medical Source Statement of Ability to Do Work-Related Activities (Mental) on February 15, 2012. She rated his ability as "poor or none" in several areas, including dealing with the public, dealing with work stresses, maintaining attention/concentration, and behaving in an emotionally stable manner.   She rated him as only "fair" in other

areas.   (Tr. 1067-1070).

## Analysis

The Court first notes that ALJ Heimann undertook a detailed credibility analysis and concluded that plaintiff's allegations were not credible.   See, Tr. 33-36.   This conclusion is amply supported by the record, and plaintiff has, wisely, not challenged it.   However, to the extent that plaintiff's arguments rely on the credibility of his own statements, they are undermined by the ALJ's adverse credibility findings.

Plaintiff's first two points concern Ms. Nosbisch's report.   He argues that the ALJ erred in failing to discuss Ms. Nosbisch's opinion.   He also argues that Ms. Nosbisch's opinion proves that the ALJ was mistaken in stating that "no examiner observed that the claimant could not maintain socially appropriate behavior."

Ms. Nosbisch is a licensed clinical professional counselor ("LCPC").   (Tr. 1070). Under the applicable regulation, she is not an "acceptable medical source." 20 C.F.R. §404.1513(a).   As such, her report does not constitute a "medical opinion."   See, 20 C.F.R. §404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources. . . .")   The ALJ was not required to analyze her report as a medical opinion under §404.1527, and her report was not entitled to any special weight or deference.   Rather, the opinions of "other sources" such as Ms. Nosbisch may be considered, as may any evidence in the record, to assess the severity of the claimant's impairments and the effect of his impairments on his ability to work.   §404.1513(d).

Page **13** of **19**

Plaintiff cites **Kasarsky v. Barnhart**, **335 F.3d 539, 543 (7th Cir. 2003)**, and **Brindisi v. Barnhart**, **315 F.3d 783, 786 (7th Cir. 2003)**, for the proposition that, while the ALJ need not discuss every piece of evidence, he must confront evidence that does not support his conclusion and explain why he rejected it.   That is, of course, the general rule.   He makes no attempt to apply that general rule to the case at hand in any meaningful way.

In **Kasarsky**, the ALJ's error was failing to explain why he did not include in his hypothetical question limitations that he had earlier found to exist.   **Kasarsky, 335 F.3d at 543**.   In **Brindisi**, the ALJ failed to mention an audiogram which arguably established that the plaintiff met one of the requirements of a Listing; the Seventh Circuit referred to the ALJ's "duty to acknowledge potentially dispositive evidence."   **Brindisi, 315 F.3d at 786.**

In a recent case, the Seventh Circuit stated that it has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it."   **Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014)**.   There, the ALJ "presented only a skewed version of the evidence" and ignored much of the evidence, including "years of records" relating to treatment for migraines.   **Ibid**.

In sharp contrast to those cases, the unmentioned evidence here is a report from a counselor (not an acceptable medical source) who saw plaintiff only one time

Page **14** of **19**

and recorded no objective findings or observations.   Ms. Nosbisch's report is a far cry from the evidence that was overlooked in **Moore, Kasarsky** and **Brindisi**. Her report cannot be fairly characterized as potentially dispositive or as evidence that undermines the ALJ's decision.   Plaintiff has not cited a case wherein the Seventh Circuit has held that an ALJ erred by failing to mention only evidence similar to Ms. Nosbisch's report, and this Court's independent research has not uncovered such a case.   In the absence of  such a precedent, this Court has grave doubts about whether the failure to mention Ms. Nosbisch's report is an error at all. In any event, even if it is an error, it is harmless.

An ALJ's error is harmless where, having looked at the evidence in the record, the court "can predict with great confidence what the result on remand will be." **McKinzey v. Astrue, 641 F.3d 884, 892 (7th Cir. 2011)**.   In **McKinzey**, the ALJ erred in not discussing the opinion of a state agency physician.   However, the Seventh Circuit held that the error was harmless because "no reasonable ALJ would reach a contrary decision on remand" based on that opinion.   **Ibid.** Similarly, no reasonable ALJ would change the result in this case based on Ms. Nosbisch's report.   Ms. Nosbisch saw Mr. Perrigo only one time, and did not record any objective findings or observations.   She is not an acceptable medical source, and her report, which is not a medical opinion, is not entitled to any deference.   Her report on its face is based on Mr. Perrigo's statements, and the ALJ's credibility determination has not been challenged.   In addition, the ALJ

discussed the report of another counselor, Jack Koch, who had seen plaintiff a number of times, and concluded that his report was entitled to little weight.   See, Tr. 38.   Mr. Perrigo does not argue that the ALJ erred in rejecting Mr. Koch's opinions.   There is no reason to think that a reasonable ALJ would not also reject Ms. Nosbisch's opinions, particularly in view of the fact that she saw plaintiff only once.

Plaintiff's second point can be swiftly disposed of.   Ms. Nosbisch's report does not, as he claims, contradict the ALJ's statement that "no examiner observed that the claimant could not maintain socially appropriate behavior."   Ms. Nosbisch saw plaintiff only once and wrote a brief note that did not contain any observations at all about ability to maintain socially appropriate behavior or ability in any other area.   Her report explicitly relied upon Mr. Perrigo's statements and not her own observations.

For his last point, plaintiff argues that the ALJ erred in failing to discuss whether he met the "C" criteria of Listing 12.06, Anxiety Related Disorders.   This argument is a complete non-starter.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled.   In order to be found presumptively disabled, the claimant must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis."   20 C.F.R. §404.1525(d).   The claimant bears the burden of proving that she meets or equals a listed impairment.   ***Maggard v. Apfel***, **167 F.3d 376, 380 (7th Cir.**

**1999).**

The requirements of Listing 12.06 are

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
    a. Motor tension; or
    b. Autonomic hyperactivity; or
    c. Apprehensive expectation; or
    d. Vigilance and scanning; or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

In order to meet Listing 12.06, the requirements of either A *and* B or A *and* C

must be met.  Plaintiff does not even argue that he meets the requirements of section A.  Further, his argument that he is unable to function independently outside his home is not supported by the evidence and relies mainly on his own subjective statements and Mr. Koch's report.   The ALJ found that plaintiff was not credible and gave little weight to Mr. Koch's report.   As the ALJ pointed out, health care providers repeatedly noted that Mr. Perrigo was cooperative and polite, maintained good eye contact, and had no problems interacting with them.  (Tr. 38).  The record also establishes that Mr. Perrigo was able to drive himself to medical and counseling appointments and to interact appropriately with health care providers, indicating that he was able to function independently outside his home.  The failure to fully analyze Listing 12.06 is not an error because the evidence did not establish that plaintiff met the requirements of that Listing.   See, ***Filus v. Astrue***, 694 F.3d 863, 867-868 (7th Cir. 2012); ***Scheck v. Barnhart***, 357 F.3d 697, 700-701 (7th Cir. 2004).

    In sum, none of plaintiff's arguments are persuasive.  Even if reasonable minds could differ as to whether Mr. Perrigo was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence.  ***Shideler v. Astrue***, 688 F.3d 306, 310 (7th Cir. 2012); ***Elder v. Astrue***, 529 F.3d 408, 413 (7th Cir. 2008).  ALJ Heimann's decision is supported by substantial evidence, and so

must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Heimann committed no errors of law, and that his findings are supported by substantial evidence.   Accordingly, the final decision of the Commissioner of Social Security denying Tony Perrigo's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDRED.**

**DATE:   June 26, 2014.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**